UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-729(DSD/HB)

Jeremy Braden,

    Plaintiff,

v.  **ORDER**

AT&T Umbrella Benefit Pan No. 3,

    Defendant.

    Alesia R. Strand, Esq., Thomas J. Beedem, Esq. and Beedem Law Office, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, counsel for plaintiff.

    Noah G. Lipschultz, Esq. and Littler Mendelson, PC, 80 South 8th Street, Suite 1300, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Jeremy Braden and defendant AT&T Umbrella Benefit Plan No. 3. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants defendant's motion.

**BACKGROUND**

This insurance benefit dispute arises out of the Plan's denial of short-term disability benefits to Jeremy Braden. From July 14, 2008, to June 2, 2015, Braden was employed at AT&T as a Business Customer Service Specialist II. Braden's position required him to use problem solving and troubleshooting skills to assist AT&T's internal customer service representatives and business clients with

a variety of cellular network and billing issues.  Admin. R. at 277-78.  The position was sedentary; it consisted of using a telephone and computer while sitting.  Id. at 1.  Braden had disability benefits through the AT&T Mobility Benefits Program (Plan).  Under the Plan, AT&T delegated its discretionary authority to make all benefit determinations to Sedgwick Claims Management Services, Inc.  See id. at 725, 727.  A claimant filing for disability benefits under the Plan must provide Sedgwick with "satisfactory Medical Evidence of [his] Disability from [his] Physician."  Id. at 703.  The Plan defines "medical evidence" as:

> Objective medical information sufficient to show that the Participant is Disabled, as determined at the sole discretion of [Sedgwick].  Objective medical information includes, but is not limited to, results from diagnostic tools and examinations performed in accordance with the generally accepted principles of the health care profession.  <u>In general, a diagnosis that is based largely or entirely on self-reported symptoms will not be considered sufficient to support a finding of Disability.  For example, reports of intense pain, standing alone, will be unlikely to support a finding of Disability</u>, but reports of intense pain associated with an observable medical condition that typically produces intense pain could be sufficient.

Id. at 725 (emphasis added).

On January 15, 2015,[1] Braden stopped working due to back pain, and, on January 23, applied for short-term disability benefits. See id. at 1, 4, 38.  On January 29, Braden submitted a form completed by his physician, Dr. Thomas Kiefer.  See id. at 85.

---

[1] Unless otherwise noted, all events occurred in 2015.

Kiefer stated that Braden suffered from "pain and immobility" due to "lumbar disc syndrome." Id. Due to this condition, Kiefer stated that Braden would need "days off work intermittently" and that his current functional restrictions were "limited lifting or bending." Id. Based on this information, Sedgwick approved disability benefits through January 22. Id. at 92.

On February 5, Braden sent Sedgwick a progress report from a February 3 follow-up visit with Kiefer, in which Kiefer discussed Braden's history of lumbar disc syndrome including two previous lumbar surgeries completed in December 2013 and June 2014. Id. at 94-95. Kiefer reported that Braden appeared in "moderate distress," had "difficulty walking," had a poor range of motion, and could not "bend forward very much." Id. at 94. Kiefer also discussed the results of a February MRI, which showed that Braden had bulging discs, and that he did not know when Braden could return to work. Id. at 95.

The Plan sought an independent review of Braden's medical records, and on February 12, Dr. Xico Garcia, a family practice physician, concluded that the evidence supported a claim for disability starting January 26 and that Braden could reasonably be expected to return to work by February 16 if his symptoms improved. Id. at 97-99. Based on Garcia's review, the Plan approved Braden's disability claim through February 16. Id. at 356.

Braden did not return to work on February 17, and, on February 20, the Plan denied disability benefits for February 17 forward because "the medical documentation did not clearly address the severity of [Braden's] condition." Id. at 358.  The denial letter informed Braden that he needed to provide "clear documentation from [his] current treating provider(s) of why [he was] not able to perform the essential duties of [his] occupation." Id. at 359. Further, the documentation would need to state "[his] functional impairments as they relat[ed] to [his] diagnosis and provide a treatment plan that addresses plans for [his] return to work with or without reasonable restrictions with a reasonable duration." Id.

In response, on March 13, Braden submitted a report from a February 25 follow-up visit with Kiefer, in which Kiefer observed that Braden experienced pain from bending forward, had difficulty sleeping because of the pain, and had a positive straight leg exam.[2]  Id. at 101-02.  Kiefer also stated that Braden should continue to be off work and that and Braden "knows he cannot sit or stand for very long."  Id.  The Plan again denied disability benefits from February 17 forward for the same reasons provided in the previous denial letter.[3]  See id. at 104-05.

---

[2] A positive straight leg exam may indicate that a patient has a herniated disc.

[3] This denial letter did not specifically address the February 25 follow-up report, but the Plan later informed Braden in a March

4

On March 27, Braden submitted a note from Kiefer stating that he had been disabled due to lumbar disc syndrome but could return to work on March 30 for 4 hours per day, 5 days per week. Id. at 125. The return-to-work note stated that Braden could not lift more than ten pounds, climb ladders, or squat, and that he may need to change positions every half-hour. Id. On April 2, Braden submitted another note dated April 1, in which Kiefer reiterated that Braden could not sit for over thirty minutes without standing or walking. Id. at 127.

Braden returned to work on March 30, but he stopped working again on April 6 due to back pain. Id. at 406. On April 22, Braden submitted an April 21 physician statement from Kiefer stating that Braden had lumbar pain with immobility. Id. at 497.[4] On April 30, Dr. Katherine Duvall, a physician specializing in occupational medicine, spoke with Kiefer by telephone and reviewed the physician statement. Id. Kiefer informed Duvall that, based on the February MRI, Braden had mild stenosis and a bulging disc, but that "the MRI did not show a 'terrible problem.'" Id. He also stated that Braden had a decreased range of motion but no

---

29 letter that the newly submitted information did not alter the previous denial. See id. at 114.

[4] Neither party cites to Kiefer's physician statement in the record, and it appears that it was not provided to the court. The court, therefore, relies on Dr. Katherine Duvall's April 30 review of the physician statement. See id. at 497. Although Braden challenges Duvall's conclusion, it appears neither party argues that Duvall's summary of the physician statement was inaccurate.

5

neurological deficits and that he wanted to keep Braden off work completely until he met his physical therapy goals. Id. Based this information, Duvall concluded there was insufficient objective medical evidence to support a claim for disability. Id. at 498. On May 6, the Plan denied disability benefits from April 6 forward. See id. at 504-06. Again, the denial letter informed Braden that he should submit documentation showing how his condition rendered it impossible for him to work. See id. at 505.

On June 1, Braden submitted physical therapy notes from Dr. Frank Wei, a physician specializing in physical medicine and rehabilitation. See id. at 522-32. Wei recommended physical therapy two days per week for four weeks. Id. at 531. After a review of this additional information, the Plan informed Braden that it would not alter its previous denial. See id. at 533. Braden then submitted a May 15 procedure report and a June 1 progress note from Wei on June 19. See id. at 209, 512. The procedure report indicated that Braden received an epidural injection in his back on May 15 and that Braden reported low back pain as "4/10" pre-procedure and "2-3/10" post-procedure. Id. at 512. In the progress note, Wei reported that Braden continued to have back and leg pain, "move[d] about the room stiffly," a straight leg test was positive, and was "not improving significantly with non-operative care." Id. at 209. On June 24, the Plan informed Braden that the new information did not alter its

decision.  Id. at 542-43.

Rather than appeal, on July 10, Braden submitted notes from a June 12 visit with Dr. John Mullan, a spine specialist. See id. at 135-36.  Mullan stated that Braden had a history of lower back pain and that Braden felt he was disabled and unable to work.  Id. at 135.  Mullan observed that Braden was "in no acute distress," had a normal gait, his "motor strength [was] 5/5 in all muscle groups," he had no sensory loss in the lower extremities, and a straight leg test was negative.  Id.  Mullan discussed the possibility of back surgery with Braden, and Braden agreed to the surgery.  Id.

On September 14, Braden, through counsel, appealed the denial of short-term disability benefits.  See id. at 145.  In support of his appeal, Braden submitted: (1) Garcia's February 12 medical review; (2) Keifer's February 25 progress notes; and (3) Mullan's June 12 follow-up visit notes.  Id.  This information was the same information Braden had earlier submitted.  See id. at 146.  Braden then requested time to submit additional materials, and the Plan granted the request.  See id. at 147, 369.

On November 11, Braden submitted information in support of his appeal consisting of all the information previously submitted in addition to (1) a July 15 follow up report from Wei; (2) a questionnaire completed by Kiefer; (3) letters from family and friends describing Braden's activity level; and (4) Braden describing his own symptoms on video.  See id. at 668-86.

7

In the questionnaire, Kiefer stated that Braden had been in "almost constant lumbar pain with spasms of severe pain." Id. at 680. He further noted that Braden's gait was "slow and guarded," his "range of motion is limited," and "he should not be working without extensive rehab or surgery." Id. When asked whether Braden's symptoms were supported by objective findings, Kiefer responded, "Not really. He has mild disc buldges on MRI." Id. at 681. Kiefer also noted several work restrictions such as no lifting, no bending or crouching, and that sitting, standing, and walking was limited to fifteen to thirty minutes before Braden required a change in position. Id. at 682-83. Kiefer noted that Braden was taking sedating medications. Id. at 684.

Wei, in his July 15 progress report stated that Braden's pain ranged from three or four out of ten to as high as five or seven out of ten as the day progressed. Id. at 210. He opined that Braden is was not "very employable even in a sedentary duty position. He would have to change positions at least every hour and given his discomfort he would not be very productive ...." Id. Wei also stated that he would take Braden off of work for six-months with "the assumption that he probably will end up having surgery ...." Id.

The Plan requested that Dr. Daniel Gutierrez, a neurosurgeon, and Dr. Heidi Klingbeil, a physician in physical medicine and rehabilitation, independently review Braden's appeal materials. On

8

December 8, Gutierrez submitted a review that considered Braden's February MRI, his two prior surgeries, his appointments with Kiefer, Wei, and Mullan, his medications, and the requirements of his job. See id. at 231-33. Of specific note, Gutierrez reviewed the MRI and noted that there were no "concerning findings to the extent that [Braden] would be considered disabled." Id. at 232. Gutierrez concluded that there was insufficient objective evidence to support a claim for disability from February 17 through March 29; April 6 through May 14; and May 18 forward. Id.

Klingbeil also submitted a review dated December 8. See id. at 236-39. Like Gutierrez, Klingbeil considered Braden's two surgeries, all of his appointments, his medications, and the requirements of his job. See id. Klingbeil concluded that there was "insufficient objective evidence to support that [Braden] was reasonably restricted from his ... occupation." Id. at 238.

Klingbeil and Gutierrez submitted revised reports after Braden submitted additional evidence for his appeal on November 11, and they both concluded that the additional information did not alter their previous opinions. See id. at 255, 263.

On December 14, the Plan issued its decision partially granting Braden's appeal. See id. at 265. The Plan approved short-term disability benefits for the period of February 17 through March 29 and May 15-17. Id. It denied benefits from April 6 through May 15 and from May 18 through December 14. Id.

9

On March 22, 2016, Braden filed this suit under 29 U.S.C. § 1132(a)(1)(B) alleging that the Plan wrongfully refused to pay him benefits.

**DISCUSSION**

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element

of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

Under ERISA, a plan participant may bring a civil action to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Because the Plan gave Sedgwick discretion to construe the terms of the Plan, its decision is reviewed under the abuse of discretion standard. Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781 (8th Cir. 2004).

Braden argues that the Plan's decision should be evaluated under a less deferential standard of review because of an alleged conflict of interest. Braden claims that Sedgwick is not truly independent because correspondence to Sedgwick is addressed to the AT&T Integrated Disability Service Center and callers to Sedgwick are "thanked for calling the AT&T Disability Service Center, as administered by Sedgwick." ECF No. 24, at 21. Braden cites nothing in the record supporting these assertions, and, even if true, these claims do not establish that Sedgwick is incapable of making an independent decision. Under the Plan, there is a clear separation of Sedgwick's authority to decide the claims and AT&T's responsibility to fund the claims; therefore, there is no potential conflict of interest. See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) ("[When] the entity that administers the plan ...

11

both determines whether an employee is eligible for benefits and pays benefits out of its own pocket ... this dual role creates a conflict of interest ...."). As a result, an abuse of discretion standard applies.

Under the abuse of discretion standard, the court will uphold the benefits decision if it was supported by substantial evidence. <u>McGee v. Reliance Standard Life Ins. Co.</u>, 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (citation and internal quotation marks omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. <u>Id.</u> "When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." <u>King v. Hartford Life & Accident Ins. Co.</u>, 414 F.3d 994, 999 (8th Cir. 2005) (citation and internal quotation marks omitted).

## II. Denial of Benefits

### A. The Independent Reviews

Braden argues that Gutierrez's and Klingbeil's reviews did not logically flow from the evidence, and the Plan abused its discretion by relying on them. See <u>Jalowiec v. Aetna Life Ins.</u>

Co., 155 F. Supp. 3d 915, 944 (D. Minn. Dec. 21, 2015) ("[I]t is an abuse of discretion for an insurer to rely on an independent reviewer's report that reflects an incomplete, selective review of the medical evidence.") (citation and internal quotation marks omitted). First, Braden asserts that Gutierrez and Klingbeil ignored relevant information. He specifically argues that (1) Klingbeil ignored his two previous back surgeries; (2) Klingbeil ignored evidence of limited range of motion in concluding that there was no evidence of a severe loss of motion; and (3) Gutierrez and Klingbeil ignored the sedating effects of his medication.[5] These claims are contradicted by the record; Braden's surgeries, limited range of motion, and medication were fully considered by Gutierrez and Klingbeil. See Admin. R. at 231-33, 236-38, 255-57, 261-63.

Braden next claims that because the MRI showed two-level degenerative disc disease, Gutierrez incorrectly concluded that it did not show "any concerning findings to the extent that [Braden] would be considered disabled form his normal occupation." Id. at 233. However, Kiefer stated that the MRI "did not show a terrible

---

[5] Braden's argument that the Plan ignored the mental requirements of his job is also unsupported by the record. A full job description, which included the mental requirements of Braden's job, was provided to Gutierrez and Klingbeil. See Admin. R. at 277-78. Further, to the extent that the denial was focused on the physical requirements of his job, it was because Braden submitted medical records that overwhelmingly focused on his physical symptoms and noted his medications only in passing.

13

problem" and it only showed "mild disc bulges." Id. at 497, 681. It was not unreasonable, therefore, for Gutierrez to conclude that the MRI did not show a serious problem such that Braden was unable perform his sedentary job.

Finally, Braden argues that it was unreasonable for Gutierrez and Klingbeil to conclude that Braden was not disabled because Kiefer, Wei, and Mullen agreed that Braden suffered from lumbar pain and degenerative disc disease. But Gutierrez and Klingbeil did not deny Braden's condition; rather, they concluded that there was insufficient objective evidence to establish that the severity of the condition prevented Braden from working. This conclusion is supported by substantial evidence. For example, the MRI only showed mild disc bulges; Kiefer concluded that the MRI did not show "a terrible problem and that there was "not really" any objective evidence supporting Braden's symptoms; and Mullen reported that Braden was "in no acute distress," his gait was normal, and he had full motor strength in all muscle groups. See Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir. 2006) ("[I]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence.") (citation and internal quotation marks omitted). Although Wei and Kiefer opined that Braden should be off work, the Plan was entitled to rely on the opinions of Gutierrez and Klingbeil because their reviews, as discussed above, were based on a full review of the record. See Black & Decker

Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose upon plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians evaluation."); Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) ("[T]reating physicians are not automatically entitled to special weight in disability determinations under ERISA."); see also Weidner v. Fed. Express Corp., 492 F.3d 925, 930 (8th Cir. 2007) (upholding a determination that the plaintiff was not disabled even though the parties agreed that she had multiple sclerosis and her primary physician had concluded that she was "fully disabled").

Although the diagnosis of degenerative disc disease was agreed on by each physician, it does not automatically follow that Braden was unable to perform his sedentary job.  Based on a thorough and careful review of the record, the court is satisfied that substantial evidence supports the Plan's denial of Braden's claim for short-term disability benefits.

    **B.**   **Partial Approval**

Braden next claims that the Plan's denial was arbitrary and capricious because the evidence that supported approval from January 15 through March 29 and May 15-17 should have also supported approval from April 6 forward.  This partial approval is

not logically inconsistent  The Plan reasonably concluded that Braden was unable to perform his job from May 15-17 because of his May 15 epidural injection.  Additionally, the denial of April 6 forward was based on evidence that Braden's symptoms had, as of March 30, improved enough to return to work.[6]  Although parts of the record indicate that Braden's symptoms had continued, see Admin. R. 209 (noting that Braden experienced some discomfort during a straight leg raise exam on June 1), it is unclear whether the symptoms were so severe Braden could not work.  Further, there is evidence that Braden's symptoms had not worsened since his return to work.  For example, Mullan reported that Braden experienced no discomfort in the straight leg exam, that his motor strength was five out of five, and he appeared to be in no acute distress.  In light of this information, the Plan's denial for the period after March 30 was not unreasonable.

    C.    **Adequate Explanation of Denial**

Braden next argues that the Plan's decision was arbitrary and capricious because its denial of benefits did not adequately inform Braden of the reasons for denial.  See King, 414 F.3d at 999 ("An administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant

---

[6] Braden claims that he only returned to work because of financial concerns.  Regardless of Braden's motive, the Plan reasonably relied on Kiefer's representation that Braden had improved enough to return to work.

16

or beneficiary of an adverse decision ...."). Specifically, Braden claims that the Plan never informed him that it was denying benefits because of a lack of objective medical evidence and that this is a post hoc rationale that the court must ignore. The court disagrees.

The Plan's denial letters stated that the benefits were denied because "[t]he medical documentation did not clearly address the severity of your condition." Admin. R. at 104. The letters also stated that:

> For your claim to qualify for benefits, AT&T ... would need clear documentation form your current treating provider(s) of why you are not able to perform the essential duties of your occupation. Your treating provider(s) would need to document your functional impairments as they related to your diagnosis .... This information may be included in the following: chart or progress notes, specialist's evaluations, physical therapy notes, diagnostic test results, operative report(s), or any other <u>clear observable medical information</u> ....

Admin. R. at 105(emphasis added). The letters adequately addressed the reasons for denial and informed Braden of what information was needed. Further, these are the same reasons stated in the Plan's final denial letter, see id. at 651-52, and on which the Plan now relies; they are not post hoc rationales.

**D.  Full and Fair Review**

Finally, Braden argues that the Plan's appeal process did not afford him a full and fair opportunity to respond to Klingbeil's and Gutierrez's reviews. See Abram v. Cargill, Inc., 395 F.3d 882,

886 (8th Cir. 2005) (holding that the plaintiff should have been permitted to review and respond to the report by an independent reviewer).  But this argument has since been rejected by the Eighth Circuit.  See Midgett, 561 F.3d at 893-96 (distinguishing Abram and holding that the plan administrator's failure to grant an opportunity for the plaintiff to review and rebut the reports of independent reviewers plaintiff did not deny her a full and fair review).  Indeed, "requiring a plan administrator to grant a claimant the opportunity to review and rebut medical opinions generated on administrative appeal would set up an unnecessary cycle of submission, review, re-submission, and re-review." Id. at 896 (citation and internal quotation marks omitted).  As a result, Braden was not denied a full and fair review of his disability claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

    1.   The motion for summary judgment by defendant [ECF No. 18] is granted;

    2.   The motion for summary judgment by plaintiff [ECF No. 16] is denied; and

    3.    The case is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 17, 2017

                                          <u>s/David S. Doty</u>
                                          David S. Doty, Judge
                                          United States District Court